UNITED STATES v. MACKEY et al.

(Circuit Court of Appeals, Eighth Circuit.   July 29, 1914.)

No. 4093.

1. INDIANS (§ 27*)—LANDS—QUIETING TITLE—PLEADING—DISMISSAL OF BILL
ON MOTION.
     A bill by the United States to quiet title to lands alleged to be unal-
lotted lands of the Creek Nation of Indians *held* erroneously dismissed
on the ground that the Creek Nation had no title, on a demurrer treated
as a motion to dismiss.
     [Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20;  Dec. Dig.
§ 27.*]

2. EQUITY (§ 241*)—PLEADING—DISMISSAL OF BILL ON MOTION.
     To authorize a court to sustain a demurrer to a bill by reason of mat-
ters of which it takes judicial notice requires a very clear case.
     [Ed. Note.—For other cases, see Equity, Cent. Dig. § 515;  Dec. Dig. §
241.*]

Appeal from the District Court of the United States for the East-
ern District of Oklahoma;  Ralph E. Campbell, Judge.

Suit by the United States against Phillip Mackey, Mary Mackey,
Lovely Mackey, for himself and as guardian of Phillip Mackey and
Mary Mackey, minors, Cyrus S. Avery, the Waterside Oil & Gas
Company, the Gypsy Oil Company, the Texas Company (sued as the
Texas Pipe Line Company), the Gladys Belle Oil Company, Charles
Stunkard, Walter Stunkard, the Pollard-Hagan Oil Company, and the
State of Oklahoma.   Decree for defendants, and the United States
appeals.   Reversed.

For opinion below, see 214 Fed. 137.   See, also, Gladys Belle Oil Co.
v. Mackey, 216 Fed. 129, 132 C. C. A. 373.

C. C. Herndon, of Muskogee, Okl. (D. H. Linebaugh, of Muskogee,
Okl., on the brief), for the United States.

John B. Campbell and George W. P. Brown, both of Muskogee,
Okl. (Wm. O. Beall and R. Emmett Stewart, both of Muskogee, Okl.,
on the brief), for appellees Cyrus S. Avery, Waterside Oil & Gas
Co., Phillip Mackey, Mary Mackey, and Lovely Mackey.

W. A. Ledbetter and B. F. Burwell, both of Oklahoma City, Okl.
(Ledbetter, Stuart & Bell and Burwell, Crockett & Johnson, all of
Oklahoma City, Okl., on the brief), for appellee Pollard-Hagan Oil
Co.

Before SANBORN and CARLAND, Circuit Judges, and REED,
District Judge.

CARLAND, Circuit Judge.   [1] The bill in this case was filed by
the United States to quiet the title to a certain parcel of land in Tulsa
county, Okl.   The Waterside Oil & Gas Company, the Texas Pipe
Line Company, the Pollard-Hagan Oil Company, and Lovely Mackey,
individually, and as guardian of Phillip Mackey and Mary Mackey,
filed demurrers to the bill, which when heard by the trial court were
treated as motions to dismiss under the new equity rules and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

motions were granted. The United States appeals from the decree dismissing the bill. We may properly say by way of premise that it would be unfortunate if the court should be compelled to decide the grave and important questions arising in this litigation, upon a mere motion to dismiss the bill and without the full presentation of the facts by way of lawful evidence. The demurrer treated as a motion to dismiss, admitted all allegations in the bill that were well pleaded. The bill, after stating the facts showing the right of the United States to maintain the same for the benefit of the Creek Nation, alleged:

"That at all times hereinafter mentioned, the following described real property has been and is now a portion of the unallotted lands of the said Creek Nation of Indians in Oklahoma, situated in Tulsa county in said state, to wit: That portion of section 18, township 18 north, range 13 east, beginning at the northwest corner of lot 1 of section 18, township 18 north, range 13 east, the same being a point at the intersection of the meander line of the north bank of the Arkansas river with the section line of between sections 7 and 18 of said township 18 north, range 13 east, and running thence south 20 degrees east 660 feet; thence south 32 degrees 15 min. east 3,102 feet; thence south 42 degrees east 459.4 feet to the point at the intersection of the meander line of the north bank of the Arkansas river with the section line between sections 17 and 18 of said township 18 north, range 13 east; thence west 1,108 feet to a point at the low-water mark of the north bank of said Arkansas river; thence north 50 degrees 30 min. west 300 feet along the low-water mark of the north bank of said Arkansas river; thence north 19 degrees 45 minutes west 1,209 feet along the low-water mark of the north bank of the said Arkansas river; thence north 50 degrees 30 minutes west 469 feet along the low-water mark of the north bank of said Arkansas river; thence north 21 degrees west 850 feet along the low-water mark on the north bank of said Arkansas river; thence north 63 degrees 30 minutes west 354 feet along the low-water mark on the north bank of said Arkansas river; thence north 65 degrees 30 minutes west 184 feet along the low-water mark of the north bank of said Arkansas river; thence north 32 degrees 45 minutes west 959 feet along the low-water mark on the north bank of said Arkansas river; thence north 89 degrees 51 minutes east 1,450 feet to the point of beginning, containing 84.41 acres'—a surveyor's plat of which said land, showing the same in green, is hereto attached, marked 'Exhibit A' and made a part of this bill; that said above tract of unallotted land lies in said section 18, township 18 north, range 13 east, between the meander line on the north bank of the said Arkansas river and the low-water mark on the north bank of said Arkansas river, and was not surveyed or allotted as a part of the tribal lands of said Creek Nation of Indians which were to be surveyed and allotted in severalty to the several members of said tribe or nation of Indians under the acts of Congress above referred to; and that no citizen of said Creek Nation of Indians has the absolute right to the fee-simple title to said land or any part thereof but that the same is owned in common by all of the citizens of said Creek Nation of Indians and is, therefore, a part of the tribal lands belonging to said nation under the supervision and control of the United States by virtue of the acts of Congress above referred to. That the above-described tract of lands is situated in the oil and natural gas belt of the said Creek Nation of Indians and is of great value chiefly because of the deposits of oil and gas under the same."

The remainder of the bill is devoted to setting forth the pretended claims of the several defendants in and to the land in question. The United States was not obliged to deraign the title of the Creek Nation in its bill, but could allege the ultimate fact of ownership without more. The demurrers treated as motions to dismiss, admitted the allegation as to ownership in paragraph three above quoted. Notwithstanding this. the court dismissed the bill for the reason that the Creek Nation

had no title to the land in controversy. As the only record before the court was the demurrers, and the bill, it is difficult to see how this result could be brought about. The United States has never at any time had an opportunity to show by evidence that the allegations contained in paragraph 3 of the bill were true. On the contrary, they have been turned out of court by a finding that the Creek Nation had no right or interest in the land, and this not upon any showing of the United States, but upon a case gathered from the world at large. All the demurrers, except that of the Pollard-Hagan Oil Company, were simply demurrers for want of equity. The Pollard-Hagan Oil Company filed a speaking demurrer. The demurrer, after stating that the bill did not state any matter of equity entitling the plaintiff to the relief prayed for, adds the following language:

"And this defendant says that it appears from the said bill of complaint that neither the plaintiff, the United States of America, nor the Muskogee or Creek Nation, or Tribe of Indians, has any interest, whatever, in the land in controversy herein for the reason that said land is described as being below the high-water mark on and adjacent to the banks of the Arkansas river, which river is a navigable stream under the laws of the United States. And this defendant avers that under the allegations in said bill it appears that the land in controversy is in the state of Oklahoma. And the defendant being the lessee of the state of Oklahoma is entitled to recover said land."

Of course, this language of the demurrer proved nothing and for the purposes of decision could have had no effect.

Counsel for the Pollard-Hagan Oil Company, in their brief, concede that the validity of its oil and gas lease depends upon the fact as to whether the Arkansas river is navigable. Counsel for Cyrus S. Avery, the Waterside Oil & Gas Company, and the Mackeys, assume that the Arkansas river is navigable. There is nothing said in the bill of the United States as to whether it is navigable or not. Counsel attempt to draw certain inferences from the language used in paragraph 3; but, if the navigability of the Arkansas river is as important as defendants seem to claim, the fact ought not to be established by inferences drawn from a strained construction of the language of the bill. Counsel for Cyrus S. Avery, the Waterside Oil & Gas Company, and the Mackeys say in their brief:

"As the record stands, there is more or less merit in the contention of the government that the demurrers, which were treated as motions to dismiss below, should have been denied."

But they say that at the argument in the court below the question whether the Creek Nation owned the bed of the Arkansas river was conceded to be the only question at issue, and the case was argued and disposed of on that theory. If there was any agreement as to the facts, it is unfortunate that it was not reduced to writing and made a part of the record, as we certainly cannot consider anything but the record as it stands.

[2] Voluminous documents are presented in the brief of counsel for the Pollard-Hagan Oil Company of which it is claimed the court below and this court may take judicial notice. We apprehend, however, that, in order to enable the court to sustain a demurrer to a bill by rea-

son of matters of which it took judicial notice, it would require a very clear case, and we are not satisfied that this is such a case.

We think we cannot do otherwise than reverse the decree of dismissal and remand the case with instructions to the trial court to deny the motions to dismiss and allow the defendants to answer if they shall be so advised.

And it is so ordered.