**In the Interest of C.W.**

**A.E. KADRMAS, M.D., Petitioner and Appellee,**

v.

**C.W., Respondent and Appellant.**

**Civ. 900004.**

Supreme Court of North Dakota.

March 27, 1990.

John J. Fox (argued), Asst. Atty. Gen., Jamestown, for petitioner and appellee.

Thomas E. Merrick (argued), Jamestown, for respondent and appellant.

MESCHKE, Justice.

C.W. appealed from a commitment to the North Dakota State Hospital for an indefinite period and from an order denying her relief from the indeterminateness of the continuing treatment. We dismiss her appeal as a premature constitutional attack on continuing treatment statutes.

In 1989 at McKenzie County, C.W. was committed to the North Dakota State Hospital on an emergency basis. During that temporary 14 day inpatient commitment, C.W. was diagnosed as a chronic schizophrenic of the undifferentiated type and as suffering from delusions.

C.W. then agreed to an order for outpatient treatment at the Northwest Human Service Center in Williston for a period of 90 days. About three weeks later, this

alternate treatment order was amended to return her to the North Dakota State Hospital for inpatient treatment. Before the 90 days were up, the Hospital petitioned in Stutsman County to continue C.W.'s treatment for an indefinite period.

At the hearing, C.W.'s treating psychiatrist testified that outpatient treatment was "at the present time not appropriate." At times, C.W. was confused as to her own identity and was physically and verbally aggressive which required "time out" or seclusion. Although C.W. believed she had heart problems, she would not allow a physical examination or EKG to confirm them. Without examination, her doctor believed these complaints were delusional. Physically, she had "a flexion deformity of the right hand caused by a 1979 suicide attempt while in a delusional and confused state."

Trying to counteract C.W.'s long-standing noncompliance with medication orders, her doctor changed her medication from a daily pill to a biweekly injection. According to her doctor, C.W. needed hospitalization until she responded to the new medicine. He stated that her treatment plan required stabilization before release and that stabilization usually took from three to six months. Despite some improvement, she was responding slowly so her doctor was unable to predict the length of her detention.

The trial court found that C.W. had been admitted to the State Hospital seven times before, and determined that she "suffers from a mental disorder which substantially impairs her capacity to use self-control, judgment and discretion, and that there is a substantial likelihood of substantial harm to herself and others as demonstrated by past actions and threats." Concluding that treatment should continue "for an indefinite period," the trial court ordered on No-

vember 1, 1989, that C.W. "be hospitalized and treated by the North Dakota State Hospital for an indefinite period, or until further order of the Court."

After that, C.W. moved for relief from the indeterminateness of the commitment. In effect, C.W. challenged both NDCC 25–03.1–22 ("an order of continuing treatment ... may be for an unspecified period of time") and 25–03.1–31 (periodic institutional reviews and reports mandated for a patient in continuing treatment). C.W. argued that "a commitment for an indefinite period of time violates ... due process of the law as guaranteed by the State and Federal Constitutions and violates the open Court provisions of the North Dakota State Constitution."

The trial court denied C.W. relief, holding that the statutes afforded due process and also reasoning

> [t]hat [C.W.'s] argument that [the statute] is not being complied with is premature and not ripe for review as to [C.W.] since the statute by its own terms, will not become operative until six months from the date of the November 1, 1989 continuing treatment order.... That [C.W.] has not shown that the statute in question has been applied unlawfully as to her, and is not entitled to any relief at this time.... That [C.W.] has not alleged that she is no longer a person requiring treatment, nor made any showing that she is not.

The trial court elaborated that "[t]he facility must do a periodic evaluation or ... the order terminates." C.W. appealed.

After an initial involuntary commitment not exceeding 90 days, NDCC 25–03.1–22 [1] authorizes extension of the commitment for continuing treatment if necessary. Upon timely petition by the superintendent of the

---

1. NDCC 25–03.1–22 says:

   *Involuntary treatment orders.*

   1. An initial order for involuntary treatment must be for a period not to exceed ninety days.
   2. If, before the expiration of the ninety-day order, the director or superintendent believes that a patient's condition is such that the patient continues to require treatment, the

director or superintendent shall, not less than fourteen days before the expiration of the order, petition the court where the facility is located for a determination that the patient continues to be a person requiring treatment and for an order of continuing treatment, which order may be for an unspecified period of time.

state hospital, "an order of continuing treatment ... for an unspecified period of time" is authorized if the patient continues to require treatment. *Id.* C.W.'s appeal challenged the constitutionality of this section when "viewed in conjunction with the rest of Chapter 25–03.1 ... especially ... 25–03.1–31, NDCC."[2] Invoking due process guarantees, C.W. urged that a commitment of unspecified duration was a significant deprivation of liberty and constitutionally impermissible. She argued that the term of a commitment for treatment must be definite, that a continuing commitment must be reviewed by the judiciary rather than mental health professionals, and that judicial review must be automatic, not patient initiated. C.W. insisted that "the only way the commitment statute can provide due process of the law ... is to provide for definite terms of commitment with automatic judicial review upon completion of that commitment term."

■ The State Hospital responded to C.W.'s appeal in several ways. First, the Hospital contended that an order denying a motion for relief from a continuing treatment order was not appealable under NDCC 25–03.1–29 which authorizes an expedited appeal from certain mental health orders.[3] The Hospital argued that the scope of a mental health appeal was "limited to a review of the procedures, findings, and conclusions of the lower court" under that statute. Since C.W. did not challenge the court's findings and conclusions, the Hospital hypothesized that C.W. had no right to appeal. We disagree. An order denying a motion to vacate a final judg-

**2.** NDCC 25–03.1–31 says:

*Review of current status of continuing treatment.* Every individual subject to an order of continuing treatment has the right to regular, adequate, and prompt review of his current status as a person requiring treatment and in need of hospitalization. Six months from the date of an order of continuing treatment, and every year thereafter, the director or superintendent where an individual is hospitalized shall review his status as a person requiring treatment and in need of hospitalization. The results of each periodic review conducted under this chapter must be made part of the patient's record, and must be filed within five days of the review, in the form of a written report, with the court where the facility is located. Within this five-day period, the director or superintendent shall give notice of the results of the review to the patient, his attorney, and his nearest relative or guardian.

If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the right to a hearing, an independent evaluation, and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital or facility within seven days, excluding weekends and holidays, after the report is received. If the petition is presented to a representative of the hospital or facility, he shall transmit it to the court forthwith. The petition must be accompanied by a report from a physician, psychiatrist, or clinical psychologist setting forth the reasons for his or her conclusions that the patient no longer is a person requiring treatment or in need of hospitalization. If no such report accompanies the petition because the patient is indigent or is unable for reasons satisfactory to the court to procure such a report, the court shall appoint an independent expert examiner to examine the patient, and the examiner shall furnish a report to the court.

If such report concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and shall dismiss the petition for discharge. If the conclusion is to the contrary, the court shall set a hearing date which must be within fourteen days of receipt of the examiner's report. At the hearing, the burden of proof is the same as in an involuntary treatment hearing.

**3.** NDCC 25–03.1–29 says:

*Appeal.* The respondent has the right to an expedited appeal from an order of involuntary commitment or alternative treatment, a continuing treatment order, an order denying a petition for discharge, or an order of transfer. Upon entry of an appealable order, the court shall notify the respondent of the right of appeal and the right to counsel. The notice of appeal must be filed within thirty days after the order has been entered. Such appeal must be to the supreme court and the hearing must be commenced within fourteen days of filing of the notice of appeal. The hearing must be limited to a review of the procedures, findings, and conclusions of the lower court. The name of the respondent may not appear on the record on appeal. Pending appeal, the order appealed from shall remain in effect, unless the supreme court determines otherwise. The respondent may not be denied the opportunity to be present at the appeal hearing, and the court conducting the appeal may issue such interim order as will assure this opportunity to the respondent while protecting the interest sought to be served by the order appealed from.

ment is an appealable order under NDCC 28–27–02(2). *B.R.T. v. Executive Director of Social Service Board*, 391 N.W.2d 594 (N.D.1986). While C.W. was probably not entitled to an expedited appeal, she was entitled to appeal.

The Hospital made an energetic argument that adequate due process protections are afforded by the statutory scheme, summarized here. Although "for an indefinite period," a continuing treatment order is effectively limited in duration to the six month and one year intervals in which it must be institutionally reviewed and justified. NDCC 25–03.1–31. The Hospital's superintendent must discharge a patient who no longer requires treatment. NDCC 25–03.1–30(2).[4] The results of each institutional review must be filed with the court. NDCC 25–03.1–31. Notice of the results must be given to the patient, to her attorney, and to her nearest relative or guardian; there is an opportunity for a hearing; the patient has a right to an independent expert examination; and the burden of proof at a hearing remains on the institution. *Id.* A patient retains all civil rights including the right to appeal and the right to habeas corpus. NDCC 25–03.1–29 [5] and 25–03.1–40(11).[6] In the Hospital's view, this array of available procedures and rights satisfies the process due considering "the reality of the long term nature ... and the uncertainty as to length of treatment" of many mental illnesses. *Cf Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (Mental patient had a § 1983 claim for violation of procedural due process for "voluntary" commitment when he was incompetent to give informed consent.); *Washington v. Harper*, —— U.S. ——, ——, 110 S.Ct. 1028, 1042, 108 L.Ed.2d 178 (1990) (Mentally ill inmate afforded procedural due process "by allowing the decision to medicate to be made by medical professionals rather than a judge."); *Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 773 (N.D.1988). ("Due process does not insist upon inflexible procedures uniformly applicable to every imaginable situation.").

These different recipes for due process were brought to us on different platters. C.W. submitted that a discharge hearing is a "rare occurrence;" that the institutional review, report, and notice procedures are indifferently carried out; and that "[e]ven the simplest procedures may be too difficult for one committed to a mental institution to follow." On the other hand, the Hospital offered statistical data showing 3,691 admissions and 3,743 releases including 2,588 discharges, during its most recent fiscal year as tending to demonstrate adherence to mandated review and discharge duties. Individually, C.W.'s history of repeated hospitalizations included seven prior admissions and releases. These contrasting settings for the efficacy of existing review procedures, which will soon apply to C.W., lead us to conclude that any constitutional problems which may exist are not ready for decision.

■ The Hospital's third argument was that "[n]one of the possible harms or prejudice raised by C.W. has in fact occurred to her and are merely speculation." The Hospital urged that C.W.'s challenges to the statutory scheme were therefore "premature and not ripe for review," and that C.W. was asking for "an advisory opinion that the law may be applied unconstitutionally to her in the future." The Hospital sought dismissal of this appeal, emphasizing that the trial court had ruled that C.W.'s "argument is premature."

---

**4.** NDCC 25–03.1–30(2) says:

*Discharge of hospitalized patient.*

&ast; &ast; &ast; &ast; &ast; &ast;

2. The superintendent or director shall discharge a patient hospitalized by court order when the patient's mental condition is such that he no longer meets the criteria of a person requiring treatment.

**5.** *See* footnote 2.

**6.** NDCC 25–03.1–40(11) says:

*Rights of patients.* Each patient of a treatment facility· shall retain the following rights, subject only to the limitations and restrictions authorized by section 25–03.1–41. A patient has the right:

&ast; &ast; &ast; &ast; &ast; &ast;

11. To exercise all civil rights including the right of habeas corpus.

C.W. conceded her present need for treatment. She conceded that there was no immediate urgency in her case. She did not contend that she had been committed unnecessarily or unduly long in the past. C.W.'s psychiatrist estimated, and the trial court ruled, that it would take an indeterminate number of months to stabilize her medication. Thus, the statutory procedures that C.W. condemns as inadequate have no bearing on her present circumstances. There has been no identified adverse application of the statutory procedures to C.W. In contrast to her fears, she has oftentimes been committed and released in the past. Her fears alone do not create a constitutional controversy to be decided.

"Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated." *Communist Party v. Control Board*, 367 U.S. 1, 71, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1960) *citing United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). An adjudication of the constitutionality of the statutory procedures in this case would be equivalent to an impermissible advisory opinion. *In Interest of Klein*, 325 N.W.2d 227 (N.D.1982). It is well settled that the courts should not give advisory opinions on academic questions where no actual controversy needs to be determined. *Peoples State Bank v. State Bank of Towner*, 258 N.W.2d 144, 145 (N.D.1977).

> Without undertaking to survey the intricacies of the ripeness doctrine[1] it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... [until] its effects [are] felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). No present hardship will result to C.W. from withholding judicial consideration of her constitutional claims at this time.

We agree with the trial court that C.W.'s constitutional arguments were premature and not ripe for review. We do not consider them at this time. *See Weigel v. Kraft*, 449 N.W.2d 583, 587 (N.D.1989). Of course, C.W. remains free to challenge the constitutionality of the statutory procedures at any time that she no longer requires treatment but continues to be confined.

For these reasons, we dismiss this appeal.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.