STATE of North Dakota ex rel. David SPRYNCZYNATYK, North Dakota State Engineer, Plaintiff and Appellee,

v.

William R. MILLS, Betty L. Mills, Dakotaville, Inc., a North Dakota Corporation, and River Woods West, Inc., a North Dakota Corporation, Defendants and Appellants.

Civ. No. 940089.

Supreme Court of North Dakota.

Oct. 27, 1994.

Charles M. Carvell (argued), Asst. Atty. Gen., Bismarck, for plaintiff and appellee.

William R. Mills, pro se.

Sherry Mills Moore (no appearance), Foss & Moore, Bismarck, for defendants and appellants Betty L. Mills, Dakotaville, Inc., and River Woods West, Inc.

NEUMANN, Justice.

William R. Mills, Betty L. Mills, Dakotaville, Inc., and River Woods West, Inc. (Mills) appeal from a partial summary judgment in the State's declaratory judgment action to determine the parties' interests in certain land[1] between the ordinary high watermark and the ordinary low watermark (the "shore zone") of the Missouri River. We reverse.

Mills owns the land above the ordinary high watermark of the shore zone. The State brought this declaratory judgment action against Mills, seeking a determination that the State's title to the shore zone extends to the ordinary high watermark. The State claimed that *Perry v. Erling*, 132 N.W.2d 889 (N.D.1965), did not adjudicate that Mills, or their predecessors, held title to the shore zone and did not bar the State from asserting title. The State also claimed that N.D.C.C. § 47–01–15 did not grant Mills absolute title to the low watermark of the shore zone and that Mills' interest, if any, in the shore zone was limited to a surface estate which was subject to the State's title and the public's right of use.

Mills claimed ownership of the shore zone to the ordinary low watermark and raised several affirmative defenses, including adverse possession, several statutes of limitation, and the res judicata effect of *Perry v. Erling*. Mills also counterclaimed, seeking quiet title in the shore zone, just compensation for property taken, and treble damages under N.D.C.C. Ch. 12.1–06.1 (Racketeer Influenced and Corrupt Organizations).

The State moved for partial summary judgment on its claims that it held title to the ordinary high watermark and that Mills' affirmative defenses did not bar its action. The district court granted partial summary judgment for the State, holding

"Absolute ownership above high watermark is in the private fee owner, and ownership of the complete bed of the river [between the ordinary high watermark on each side] is in the state of North Dakota, subject to the private fee owner's riparian rights over the shore zone for access and for such other traditional riparian rights as may be found to exist. Primarily, the riparian owner's rights are that of access to the water, the right to build a pier to the water, the right to accretions and the right to make reasonable use of the water....

\* \* \* \* \* \*

---

1. The State described the land as "Sections 7, 8, and the N½ of Section 18, Township 138 North, Range 80 West, Burleigh County, and is all that land on the east side of the Missouri River that is located between the ordinary high watermark and the low watermark."

"The combination of the anti-gift provisions of the North Dakota State Constitution and the public trust doctrine clearly prohibit an interpretation of N.D.C.C. § 47–01–15 which would create a grant of the shore zone from the State of North Dakota to the Defendant in this case. Just as the territorial legislature had no authority to grant away trust property held for the future state, neither does the state have the right to grant away its sovereign trust property to private individuals without consideration, and in derogation of its duty to the public to maintain such lands for the benefit of all citizens of the state.

"The Court therefore holds that N.D.C.C. § 47–01–15 constitutes a rule of construction, and not a rule of property. . . .

"It should be emphasized that the State of North Dakota does not own the shore zone in a proprietary capacity, but a sovereign one. In other words, the property is held for the benefit of all the people and for their use, including navigation, recreation, ecological and esthetic preservation, and other public purposes. The private land owner has the right to access the water through the shore zone adjacent to the high watermark and exercise such other riparian rights as are not in conflict with the rights of the public. . . .

"The Court holds that the State of North Dakota holds title to the shore zone, subject to the riparian rights of the Defendant, who may exercise said riparian rights insofar as they do not conflict with the superior right of the State of North Dakota to hold and manage the shore zone for public purposes. The title of the Defendant Mills is absolute only to the ordinary high watermark, and in the shore zone, the Defendant Mills has only the riparian right of access to the water and such other riparian rights as do not conflict with the paramount right of the State. This declaration of rights is made in order to avoid

holding N.D.C.C. § 47–01–15 unconstitutional, and statutes should be so construed. See N.D.C.C. § 1–02–38."

The district court issued a certification under N.D.R.Civ.P. 54(b), to allow an immediate appeal.

The primary issue in this case involves the interests of Mills and the State in the shore zone. Before outlining the parties' arguments, we generally describe the historical development of property interests in the beds of navigable waters.[2]

Before North Dakota was admitted to the Union, the United States held the beds of navigable waters in the Dakota Territory from high watermark to high watermark in trust for the future state. *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); *Oregon v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977); *J.P. Furlong Enterprises, Inc. v. Sun Exploration & Production Co.,* 423 N.W.2d 130 (N.D.1988). Upon admission to the Union, North Dakota was entitled to sovereign ownership of the beds of navigable waters from high watermark to high watermark under the equal footing doctrine. *Oregon v. Corvallis Sand & Gravel Co., supra; Barney v. Keokuk,* 94 U.S. 324, 24 L.Ed. 224 (1876); *Pollard's Lessee v. Hagan,* 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845). Upon entering the Union on equal footing with the established States, the "rights of riparian or littoral proprietors in the soil below high water mark of navigable waters [were] governed by the local laws." *Shively v. Bowlby,* 152 U.S. 1, 40, 14 S.Ct. 548, 563, 38 L.Ed. 331 (1894). *See Montana v. United States, supra; Oregon v. Corvallis Sand & Gravel Co., supra; Barney v. Keokuk, supra; Shively v. Bowlby, supra; J.P. Furlong, supra.* Under those principles, North Dakota could "resign to the riparian proprietor rights which properly belong to [it] in [its] sovereign capacity," and was free to allocate property interests in the beds of navigable waters below the ordinary high

---

**2.** The parties do not dispute that the Missouri River is a navigable river. *Hogue v. Bourgois,* 71 N.W.2d 47 (N.D.1955); *State v. Loy,* 74 N.D. 182, 20 N.W.2d 668 (N.D.1945). *See Ozark–Mahoning Co. v. State,* 76 N.D. 464, 37 N.W.2d 488 (1949); *State v. Brace,* 76 N.D. 314, 36 N.W.2d 330 (1949); Carvell, *North Dakota Waterways: The Public's Right of Recreation and Questions of Title,* 64 N.D.L.Rev. 7 (1988); Note, *North Dakota Century Code § 47–01–15: Determining North Dakota's Interest in the Beds of Navigable Waters,* 59 N.D.L.Rev. 211 (1983).

watermark. *Barney v. Keokuk, supra,* 94 U.S. at 338. *See* N.D.C.C. § 47–01–14. However, North Dakota could not totally abdicate its interest to private parties because it held that interest, by virtue of its sovereignty, in trust for the public. *Illinois Central Railroad v. Illinois,* 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892); *United Plainsmen Ass'n v. North Dakota State Water Conservation Commission,* 247 N.W.2d 457 (N.D.1976).

In this case, Mills asserts that, under N.D.C.C. § 47–01–15, he owns the shore zone to the low watermark, subject only to a navigational servitude to the high watermark. The State asserts that under the equal footing and public trust doctrines, it owns the shore zone to the high watermark. The State argues that N.D.C.C. § 47–01–15 does not grant riparian landowners title to the shore zone and that it only confirms that riparian landowners have riparian rights in the shore zone.

Section 47–01–15, N.D.C.C., provides:

*"Banks and beds of streams—Boundary of ownership.*—Except when the grant under which the land is held indicates a different intent, the owner of the upland, when it borders on a navigable lake or stream, takes to the edge of the lake or stream at low watermark. All navigable rivers shall remain and be deemed public highways. In all cases when the opposite banks of any stream not navigable belong to different persons, the stream and the bed thereof shall become common to both."

This court has said that "the owner of lands riparian to a navigable stream owns title to the low water mark." *Hogue v. Bourgois,* 71 N.W.2d 47, 52 (N.D.1955), citing *Gardner v. Green,* 67 N.D. 268, 271 N.W. 775 (1937), and *State v. Loy,* 74 N.D. 182, 20 N.W.2d 668 (1945). However, those decisions did not interpret N.D.C.C. § 47–01–15 in the context of the competing interests of the State and a riparian landowner in the shore zone. In *J.P. Furlong Enterprises, Inc. v. Sun Exploration & Production Co.,* 423 N.W.2d at 132 n. 1, we explicitly observed that "[w]hether North Dakota has limited its title to the area below the low watermark has not been decided. *See*

N.D.C.C. 47–01–15 and Note, 59 N.Dak.L.Rev. 211 (1983)." Any statements in our prior decisions that "the owner of lands riparian to a navigable stream owns title to the low water mark" are dicta. This case presents the issue of the competing interests of riparian landowners and the State in the shore zone.

■ Our duty is to ascertain the intent of the Legislature under our Constitution. *E.g., County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). The Legislature's intent must be sought initially from the language of the statute. *Id.* Unless words in a statute are defined in the code, they are construed according to their plain, ordinary, and commonly understood meaning. *Kim–Go v. J.P. Furlong Enterprises, Inc.,* 460 N.W.2d 694 (N.D.1990); N.D.C.C. §§ 1–02–02 and 1–02–03. Statutory provisions must be considered as a whole with each provision harmonized, if possible. *Stewart v. Ryan,* 520 N.W.2d 39 (N.D.1994). Statutory provisions that are substantially the same as previously existing statutes are construed as continuations thereof. N.D.C.C. § 1–02–25; *Sargent County v. Cooper,* 29 N.D. 281, 150 N.W. 878 (1915); *Wells County v. McHenry,* 7 N.D. 246, 74 N.W. 241 (1898). Whenever possible, we construe statutes in harmony with the constitution to avoid constitutional infirmities. *E.g., City of Bismarck v. Nassif,* 449 N.W.2d 789 (N.D. 1989); N.D.C.C. § 1–02–38(1).

■ Section 47–01–15, N.D.C.C., says that "[e]xcept when the grant under which the land is held indicates a different intent," the upland owner "takes" to the edge of the navigable lake or stream at low watermark. "Takes" has many shades of meaning which depend on the circumstances in which it is used, although one meaning includes: "To acquire the title to an estate; to receive or be entitled to an estate in lands from another person by virtue of some species of title." Black's Law Dictionary, p. 1453–1454 (6th ed. 1991). *See* 83 C.J.S., *Take* 938 (1953). The precise meaning of "takes," and the type of interest the upland owner "takes" to the low watermark is unclear. If a statute is ambiguous, we may resort to extrinsic aids, includ-

ing historical background, to construe it. *J.P. Furlong Enterprises, Inc., supra; County of Stutsman, supra.*

A related statute, N.D.C.C. § 47–01–14,[3] authorizes the Legislature to regulate "ownership" below the ordinary high watermark of navigable waters. *See Barney v. Keokuk, supra; Shively v. Bowlby, supra.* Sections 47–01–14 and 47–01–15, N.D.C.C., are derived from §§ 169 and 267 of the 1865 Civil Code of the State of New York (Field Code).[4] *See J.P. Furlong Enterprises, Inc.,* 423 N.W.2d at 135–37, nn. 17, 23 and 24. They were originally enacted in the Dakota Territory Civil Code of 1865, §§ 169, 267, and were amended by the 1877 Revised Codes Territory of Dakota, Civil Code, §§ 169, 266.[5] *Id.* at 136–37, nn. 23 and 24. The corresponding New York Field Code provision annotates the "takes to the edge of the lake at low water mark" clause of the predecessor to N.D.C.C. § 47–01–15, with a citation to *The Champlain and St. Lawrence Rail Road Co. v. Valentine,* 19 Barb. 484 (N.Y.App.Div. 1853), which we may consider in construing our statute. *See J.P. Furlong Enterprises, Inc.,* 423 N.W.2d at 135, n. 18.

*Champlain* was an ejectment action to recover possession of a store located on a parcel of land adjoining Lake Champlain, a fresh water navigable lake. Part of the store was situated between the high and low watermarks (the "shore zone"), and part below the low watermark of the lake. In 1844, McCollum conveyed the parcel of land to Webb, but reserved and excepted the store. The plaintiffs obtained title to the parcel of land by mesne conveyances from Webb. Later, the land office issued grants to the plaintiffs for the lands under the lake and adjacent to the land where the store was located. The plaintiffs claimed the land office grants included the part of the store that was between the high and low watermarks.

On appeal, the issue was the parties' interest in the store. That issue involved the extent of McCollum's exception and reservation of the store in the 1844 conveyance and depended on whether the high watermark or the low watermark was the boundary of the land bordering on the lake. The court held that "the proprietors on the borders of Lake Champlain must be deemed the owners to low water mark, unless otherwise limited by the terms of their grants." *Champlain, supra,* at 492. The court concluded that, at the time he conveyed the parcel of land to Webb, McCollum owned that part of the store above the low watermark, and that those holding the store through him were entitled to that

3. Section 47–01–14, N.D.C.C., provides:

   *"Land below high watermark—Regulated by federal or state law.*—The ownership of land below ordinary high watermark and of land below the water of a navigable lake or stream is regulated by the laws of the United States or by such laws as under authority thereof, the legislative assembly may enact."

4. Section 169 of the New York Field Code provided:

   "The state is the owner of all land, below high water mark, bordering upon tide water; of all land below the water of a lake or stream which constitutes an exterior boundary of the state; of all property lawfully appropriated by it to its own use; of all property dedicated to the state, and of all property of which there is no other owner."

   Section 267 of the New York Field Code provided:

   "When land borders upon tide-water, or upon water which constitutes an exterior boundary of the state, the owner of the upland takes to high-water mark; when it borders upon a navigable lake where there is no tide, the owner takes to the edge of the lake at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

5. 1877 Revised Codes Territory of Dakota, Civil Code § 169 provided:

   "The ownership of land below ordinary high water mark, and of land below the water of a navigable lake or stream, is regulated by the laws of the United States or by such laws as, under authority thereof, the legislative assembly may enact. The territory is the owner of all property lawfully appropriated or dedicated to its own use; and of all property of which there is no other owner."

   1877 Revised Codes Territory of Dakota, Civil Code § 266 provided:

   "Except where the grant under which the land is held indicates a different intent, the owner of the upland when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low-water mark, and all navigable rivers shall remain and be deemed public highways. In all cases where the opposite banks of any streams, not navigable, belong to different persons, the stream and the bed thereof shall become common to both."

part of the store. The court also recognized that "[i]f the building is an obstruction or annoyance to the common passage by the public and to navigation, it may be a public nuisance. But that is a matter between those maintaining it there and the public." *Id.*

The effect of the decision in *Champlain* is that, as a rule of property for determining boundaries, grants of land bordering on navigable waters convey the granted interest to the low watermark, unless otherwise limited by the terms of the grants. The court's statements about public nuisance nevertheless recognize certain public rights above the low watermark and indicate that the upland owners' grants do not authorize them to "take" absolute ownership to the low watermark. See generally, 3 Kent's Commentaries, pp. 462–69 (Lacey's Edition 1892); Annot., Title to Beds of Natural Lakes or Ponds, 23 A.L.R. 757 (1923).

Other Field Code and Dakota Territory Civil Code provisions support that conclusion. Section 47–01–15, N.D.C.C., was originally part of an article of the Field Code and the 1865 Dakota Territory Civil Code dealing with "boundaries." The next section in that article, § 267, said that "[a]n owner of land, bounded by a road or street, is presumed to *own* to the center of the way, but the contrary may be shown." (Emphasis added). *See* N.D.C.C. § 47–01–16. The territorial Legislature thus specified that a landowner presumptively *owns* to the center of an adjoining road or street, whereas, a riparian landowner *takes* to the low watermark. A contemporaneous provision, Section 159 of the Field Code, the 1865 Dakota Territorial Civil Code, and the 1877 Revised Codes Territory of Dakota, Civil Code, defined "ownership" as the "right of one or more persons to possess and use [property] to the exclusion of others." *See* N.D.C.C. § 47–01–01. The specific terms employed in the territorial statutes and the definition of "ownership" have continuously remained as statutory provisions in North Dakota, and evidence a legislative intent that "takes" was not intended as a self-executing grant of absolute "ownership" to the low watermark.

We believe the decision in *Champlain* and the different terms in those enduring statutes, coupled with the introductory clause in N.D.C.C. § 47–01–15 which focuses on "the grant under which the [riparian] land is held," as a whole, evidence a legislative intent that that statute did not grant a riparian landowner absolute ownership of the shore zone. We agree with the district court that N.D.C.C. § 47–01–15 is a rule of construction for determining the boundary for grants of riparian land and is not itself an absolute grant of ownership to the low watermark. As a rule for interpreting conveyances, a riparian grantee "takes" the interest that is granted in the conveying instrument to the low watermark, which is the boundary of the grantee's interest. We construe N.D.C.C. § 47–01–15 in that manner to avoid an interpretation that would grant a private party a gift in violation of the anti-gift clause of our state constitution, N.D. Const. Art. X, § 18.[6] *See Solberg v. State Treasurer*, 78

---

6. Immediately upon admission of North Dakota to the Union in 1889, our constitution took effect. 1889 N.D. Const., Schedule, § 11. Pursuant to Section 2 of the constitutional schedule for statehood, "[a]ll laws now in force in the Territory of Dakota, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitations or be altered or repealed." At the time of statehood, the territorial Legislature had enacted the predecessors of N.D.C.C. §§ 47–01–14 and 47–01–15, and those provisions have continuously remained as statutory provisions in North Dakota. Section 2 of the constitutional schedule for statehood provides some authority that the predecessor of N.D.C.C. § 47–01–15 became state law simultaneously with the admission of North Dakota to the Union and the effective date of our state constitution, including the anti-gift clause. Under that analysis, construing N.D.C.C. § 47–01–15 as a grant arguably would not violate the anti-gift clause.

However, in construing a similar territorial law in the context of a parallel constitutional schedule for laws "in force," Oklahoma courts have concluded that the Oklahoma Territorial Legislature did not have authority to enact a law which would deprive the future state of sovereignty over a shore zone. *United States v. Mackey*, 214 F. 137 (E.D.Okl.1913), *rev'd on other grounds*, 216 F. 126 (8th Cir.1914); *State v. Nolegs*, 40 Okl. 479, 139 P. 943 (1914). *See United States v. Brewer–Elliott Oil & Gas Co.*, 249 F. 609 (W.D.Okl.1918), *aff'd*, 270 F. 100 (8th Cir.1920), *aff'd*, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140 (1922); *see also Ex parte Bustillos*, 26 N.M. 449, 194 P. 886 (1920) [territorial law restraining executive's pardon power was declared unconsti-

N.D. 806, 53 N.W.2d 49 (1952); *Herr v. Rudolf,* 75 N.D. 91, 25 N.W.2d 916 (1947).

With this interpretation, we conclude that, absent a contrary intent, the "grant under which the [riparian] land is held" includes a riparian grantee's full interest in the shore zone, and necessarily precludes the State's claim of absolute ownership to the high watermark.[7] However, the equal footing and public trust doctrines establish that the State cannot totally abdicate its interest to the high watermark, and that a riparian landowner's interest to the low watermark is not absolute. *Illinois Central Railroad, supra; United Plainsmen Ass'n, supra.* See also N.D. Const. Art. XI, § 3; Note, *The Public Trust Doctrine in North Dakota,* 54 N.D.L.Rev. 565 (1977–78).

Under statutes similar to N.D.C.C. § 47–01–15, other courts have recognized that neither the State nor riparian landowners have absolute title in the shore zone and that both parties have correlative interests in the area. *State v. Korrer,* 127 Minn. 60, 148 N.W. 617 (1914); *Flisrand v. Madson,* 35 S.D. 457, 152 N.W. 796 (1915). *See also State v. Superior Court of Lake County,* 29 Cal.3d 210, 172 Cal.Rptr. 696, 625 P.2d 239, *cert. denied,* 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165 (1981); *Montana Coalition for Stream Access, Inc. v. Curran,* 210 Mont. 38, 682 P.2d 163 (1984).

In *Flisrand, supra,* 152 N.W. at 801, the South Dakota Supreme Court said:

"What, then, are the respective rights of plaintiff and the state as to the shore intervening between high and low water mark? The plaintiff has the right of access to and use of such waters; he has the right to accretions and relictions which may attach to such shore; he has the right to use such shore in all ways that he may desire, so long as and with the exception that he does not interfere with or prevent the public from also using or having access to the same for the purposes for which the public has a right to use it, viz., navigating, boating, fishing, fowling, and like public uses. And the state has no right to control or interfere with plaintiff's said use so long as plaintiff does not interfere with said public use."

In *Korrer, supra,* 148 N.W. at 623, the Minnesota Supreme Court said:

"While the title of a riparian owner in navigable or public waters extends to ordinary low-water mark, his title is not absolute except to ordinary high-water mark. As to the intervening space his title is limited or qualified by the right of the public to use the same for purpose of navigation or other public purpose. The state may use it for any such public purpose, and to that end may reclaim it during periods of low water, and protect it from any use, even by the riparian owner, that would interfere with its present or pro-

tutional after statehood and thus was not "in force" at time state constitution was adopted].

In *Mackey,* the federal district court of Oklahoma concluded that the Oklahoma Territorial Legislature had no authority to legislate regarding the rights of owners bordering on navigable rivers because the United States held those lands in trust for future states. The court concluded that "the defining of the rights of riparian owners in the beds of navigable streams is not a rightful subject of territorial legislation." *Mackey, supra,* 214 F. at 149. The court held that a territorial statute was void and did not become a law of Oklahoma under a similar constitutional schedule for statehood because the statute was not "in force" in the territory. The Eighth Circuit reversed *Mackey* on procedural grounds without considering the "in force" rationale. However, that rationale was followed in *Nolegs* and was cited with approval in *Brewer–Elliott.* Because of our interpretation of N.D.C.C. § 47–01–15, we need not address this issue.

7. We reject the State's argument that the 1989 enactment of a definition of "sovereign lands" in N.D.C.C. § 61–33–01(3) is indicative of legislative intent regarding the interest that a riparian landowner "takes" under N.D.C.C. § 47–01–15. That definition arguably grants the State a greater interest in the shore zone than allowed under N.D.C.C. § 47–01–15 and cannot be used to bootstrap a legislative intent for the predecessor of N.D.C.C. § 47–01–15. Generally, subsequent amendments to a statute cannot be considered as indicating the intention of the Legislature in adopting earlier statutes. *Linington v. McLean County,* 161 N.W.2d 487 (N.D.1968) (on petition for rehearing). *See State v. Brace,* 36 N.W.2d at 332 ("The legislature may not adopt a retroactive definition of navigability which would destroy a title already vested under a federal grant, or transfer to the state a property right in a body of water or the bed thereof that had been previously acquired by a private owner.").

spective public use, without compensation. Restricted only by that paramount public right the riparian owner enjoys proprietary privileges, among which is the right to use the land for private purposes."

■ Those cases demonstrate that no interest in the shore zone is absolute. Although a riparian landowner may claim absolute ownership of the land above the ordinary high watermark and the State may claim absolute ownership of the land below the ordinary low watermark via the public trust and equal footing doctrines, those doctrines and N.D.C.C. § 47–01–15 do not contemplate absolute ownership of the shore zone by either party. Both parties have correlative interests in the shore zone. *Cf. Hystad v. Industrial Commission,* 389 N.W.2d 590 (N.D.1986) (in determining spacing units for gas pool, correlative rights include interdependent rights and duties of each landowner in the common source of supply). Under the public trust and equal footing doctrines the State has interests in the shore zone, which involve more than a navigational servitude. *Illinois Central Railroad, supra; United Plainsmen Ass'n, supra.* Under N.D.C.C. § 47–01–15, a riparian owner "takes" more than the mere right of access to the water.

■ The parties' interests in the shore zone are coexistent and overlap, but in this case no specific right or claim for use of the shore zone is contested. The shore zone presents a complex bundle of correlative, and sometimes conflicting, rights and claims which are better suited for determination as they arise. Any precise delineation of the parties' rights in this situation would be advisory. It is well established that courts will not give advisory opinions if there is no actual controversy to be determined. *E.g., Gosbee v. Bendish,* 512 N.W.2d 450 (N.D. 1994). Merely because a proceeding is

brought in the context of a declaratory judgment action does not eliminate the requirement of an actual controversy. *Id.* " 'No action or proceedings lie under a declaratory judgment Act to obtain a decision which is merely advisory or which merely determines abstract questions.' " *Id.* at 453, citing *West Fargo Public School District v. West Fargo Education Ass'n,* 259 N.W.2d 612, 617 (N.D. 1977). *See also Mullins v. North Dakota Department of Human Services,* 483 N.W.2d 160, 166 (N.D.1992) (". . . there is no dispute ripe for legal review, . . ."). As stated in *In Interest of C.W.,* 453 N.W.2d 806, 810 (N.D. 1990), we "should not give advisory opinions on academic questions where no actual controversy needs to be determined."

■ In the absence of a claim or controversy regarding the specific use of the shore zone, we decline to speculate on the precise extent of the parties' rights and interests vis-a-vis the shore zone. However, to the extent the trial court held that the State had absolute title to the shore zone and Mills had only riparian rights, we hold that the trial court erred. Neither party has absolute ownership of the shore zone. Instead, they have coexistent, overlapping interests in the area.

■ We reverse the summary judgment.[8]

MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, C.J., concurs in the result.

LEVINE, Justice, concurring.

I am not sure we are reversing more than the semantics of the trial court's holding. While the trial court may have overstated the breadth of the State's ownership in the shore zone to be "absolute title," I do not read the

---

8. Mills also argues that the State's declaratory judgment action is precluded by several affirmative defenses, including the res judicata effect of *Perry v. Erling,* 132 N.W.2d 889 (N.D.1965), adverse possession, and the statute of limitations in N.D.C.C. § 28–01–01. We disagree.

In *Perry v. Erling,* this court declined to decide title to this land and also did not decide the issue raised in this case. That decision is not res judicata.

Art. IX, § 9, N.D. Const., precludes claims of adverse possession against the State. *See Cook v. Clark,* 375 N.W.2d 181 (N.D.1985).

Section 28–01–01, N.D.C.C., requires the State to institute an action within forty years after a dispute arises and not within forty years after the State acquires an interest in real property and therefore does not preclude this action. *Nagel v. Emmons County Water Resource District,* 474 N.W.2d 46 (N.D.1991).

majority opinion as disagreeing with the trial court's holding that Mills has only riparian rights to the shore zone. Whatever those riparian rights entitle Mills to will have to await a case-by-case disclosure, but whatever it is, it must be decided in the context of the State's sovereign duty to hold the shore zone in trust for the public. While I concur in the opinion, and I believe we have dutifully counted the angels on the pin, we have left both parties in limbo to speculate over what their "correlative" rights are and probably to dream the impossible dream about the parameters of those rights.