GIBSON, RESPONDENT, *v.* KELLY, APPELLANT.

[Submitted January 23, 1895.  Decided February 25, 1895.]

BOUNDARY—*Riparian ownership—Common-law rule.*—At common law navigable water is that which ebbs and flows with the tides of the ocean, and the abutting landowner has title to high-water mark.  Upon non-navigable streams the abutting landowner has title *ad filum medium aquæ.*

SAME—*Same—Montana rule.*—Under Montana law the boundary of land on a nontidal navigable river, whenever another intent is not expressed, extends to the ordinary low-water mark.

SAME—*Same—Ejectment.*—Ejectment will lie at the suit of a riparian owner on a navigable stream to recover the possession of land between high and low water mark from one who is in possession thereof not claiming rights as a navigator or fisherman.

*Appeal from Tenth Judicial District, Choteau County.*

EJECTMENT.   Judgment was rendered for the plaintiff by Du BOSE, J.   Affirmed.

Statement of the case by the justice delivering the opinion:

A demurrer to the defendant's answer was sustained, and judgment accordingly entered for plaintiff.   The defendant appeals.   The action is one in the nature of ejectment.   Plaintiff sets up in his complaint that for five years last past he has been, and still is, the owner of lot number 3, section 12, township 23 north, range 7 east, county of Choteau, state of Montana, according to the government survey; that said land is bounded on the southeast side by the Missouri river; that the defendant has entered upon and taken possession of a portion of said premises, to wit, a strip six hundred feet wide, lying next to and bounded by the said river on the southeast side, and that he wrongfully and unlawfully occupies and possesses the same, and detains the same from the plaintiff.

The answer admits that the plaintiff is the owner of said lot number 3, and alleges that the defendant is not occupying any portion of said lot.   The defendant admits that the Missouri river is the southeast boundary of said lot, but that the said southeast boundary is the high-water mark of said river.   He alleges that said river is a navigable river.   The defendant admits that he is in possession of a strip of land six hundred feet wide in said section 12, township 23 north, range 7 east,

and he alleges that said strip is bounded on the southeast by the Missouri river, and on the north by said lot number 3, the land owned by the plaintiff; and that said northwest boundary of defendant's said land is the ordinary high-water mark of the Missouri river; that the piece or parcel of land so possessed and occupied by the defendant is the same parcel alleged in plaintiff's complaint to be a part of said lot number 3; and that said strip of land in controversy is the land which lies between the low-water mark and the high-water mark of said river. By reason of which facts defendant alleges that said strip of land is not, and never was, a part of said lot 3, and that plaintiff has not, and never had, any right, title, or interest therein, or in any part thereof, or any right to possession thereof.

The plaintiff's demurrer to this answer was upon the ground that the answer did not state facts sufficient to constitute a defense. This demurrer was sustained.

The question presented is whether, when the plaintiff's land was bounded by the Missouri river, he could maintain ejectment against the defendant for taking possession and retaining and excluding the plaintiff from the possession of the strip of ground between the high-water mark and the low-water mark.

*Ransom Cooper*, for Appellant.

The common law is in force in this state, and, it being admitted that the Missouri river is navigable, the plaintiff's rights as a riparian proprietor would be governed by the rule of the common law, namely, that riparian proprietors upon navigable streams take title to high-water mark only. The title to the bed of the stream, including, of course, land lying between high and low water mark, is in the state, and if in the state, then the plaintiff cannot maintain ejectment for it. (*Coburn* v. *Ames*, 52 Cal. 485; *McManus* v. *Carmichael*, 3 Iowa, 1; *Parker* v. *West Coast Packing Co.*, 17 Or. 510.) The supreme court of the United States in very many cases has adopted and emphatically expressed its belief in the soundness of the high-water mark theory of the law, and notably so in the following cases: *Bowman* v. *Walker*, 2 McLean, 376; *Pollard* v. *Hogan*, 3 How. 212; *Good Title* v. *Kibbe*, 9 How. 471; *Propeller Genesee*

*Chief* v. *Fitzhugh*, 12 How. 453; *Howard* v. *Ingersoll*, 13 How. 381; *Illinois Cent. R. R. Co.* v. *Illinois*, 146 U. S. 387. (See, also, *Railroad Co.* v. *Schurmeir*, 7 Wall. 288.)

*Arthur J. Shores*, for Respondent.

So far as the general government is concerned the rights of riparian owners on a stream must be determined according to the law of the state within which they are situated. (*City of St. Louis* v. *Rutz*, 11 Sup. Ct. 338; *Barney* v. *Keokuk*, 94 U. S. 324.) A great diversity of opinion exists as to the title to the beds and banks of navigable streams, but it is almost universally conceded that the riparian proprietor has the exclusive right to occupy and use the banks and beds of navigable rivers and lakes to the point of navigability, subject only to the public easement of navigation, and such proprietor may fill in and reclaim shallow waters to the point of navigability and exercise exclusive dominion over such reclaimed land. And this proposition is likewise quite generally maintained where the lands border upon tidal waters. (See *McManus* v. *Carmichael*, Iowa; *Krant* v. *Crawford*, 18 Iowa, 549; *Messer* v. *Hersley*, 42 Iowa, 361; *Dutton* v. *Strong*, 1 Black, 23; *Yates* v. *Milwaukee*, 10 Wall. 497; *Illinois Cent. R. R. Co.* v. *Illinois*, 146 U. S. 387; *Mather* v. *Chapman*, 40 Conn. 382; *Simons* v. *French*, 26 Conn. 346; *Nichols* v. *Lewis*, 15 Conn. 136; *Bell* v. *Gough*, 23 N. J. L. 624; *Berry* v. *Schneider*, 3 Bush, 266. *Clement* v. *Burns*, 43 N. H. 609; *Lyons* v. *Fishmongers*, L. D; App. Cas. 662; *Blunder* v. *Caterall*, 5 Barn. & Ald. 268; *Rice* v. *Ruddyman*, 10 Mich. 130; *Hanford* v. *St. Paul etc. R. R. Co.*, 43 Minn. 104; *Morrill* v. *St. A. F. W. P. Co.*, 26 Minn. 228.) Upon the vexed question as to whether the title of the riparian proprietor extends to the lands under the waters of our navigable rivers the decisions are numerous and not harmonious. In Illinois title extends to center of stream (*Middleton* v. *Pritchard*, 3 Scam. 570; *Brookland* v. *Smith*, 140 Ill. 429); the rule is the same in Mississippi. (*Morgan* v. *Reading*, 3 Smedes & M. 336; *Magnolia* v. *Marshall*, 38 Miss. 109.) In Michigan title extends to the center of navigable streams. (*Fletcher* v. *Thunder Bay River Boom Co.*, 51 N. W. Rep. 277; *Buster* v. *Grand Rapids etc. R. R. Co.*, 85 Mich. 246; *Richard-*

*son* v. *Prentiss*, 48 Mich. 88; *Maxwell* v. *Bay City Bridge Co.*, 41 Mich. 483.) The common-law rule prevails in Ohio (*Day* v. *Pittsburgh etc. R. R. Co.*, 44 Ohio St. 406); so in New York. (*Ex parte Jennings*, 6 Cow. 518; *Smith* v. *City of Rochester*, 92 N. Y. 463.) In Wisconsin the title of the riparian owner whose land is bounded by a navigable stream extends to the thread of the stream. (*Oleson* v. *Merrill*, 42 Wis. 203.) In Pennsylvania title extends to low-water mark on navigable streams. (*Tinicum Fishing Co.* v. *Carter*, 61 Pa. St. 21; *Flannagan* v. *Philadelphia*, 42 Pa. St. 229.) Valuable discussions of the general subject will be found in the following decisions: *Elders* v. *Burnes*, 6 Humph. 366; *Thurman* v. *Morrison*, 14 B. Mon. 367; *Clement* v. *Burns*, *supra*; *Home* v. *Richards*, 4 Cal. 441; *Bradshaw* v. *Duluth Imperial Mill Co.*, 53 N. W. Rep. 1066; *Lamphrey* v. *Metcalf*, 53 N. W. Rep. 1139; *State* v. *Narrows Island Club*, 5 S. E. Rep. 411.

De Witt, J.—This case presents a proposition which is wholly new in this state, and one which, for a century past, has commanded the interest and learning of the ablest of the United States and state courts. The question is simply stated: If one's land be bounded by a navigable river, does his title extend *ad filum medium aquæ*, or to the low-water mark, or to the high-water mark? The legal literature upon this subject in this country is rich in research, reasoning, and learning. In fact the matter has been so extensively treated that at this late day, when a new state is called upon to fix the rule, there is nothing left to say upon the subject, either new or original; and the labors of a court are perhaps nothing more than to select from the three rules which have heretofore been adopted in different jurisdictions that which may be deemed to be the one which, under all the circumstances, should obtain in this state.

Under the common law navigable water was that which ebbed and flowed with the tides of the ocean. Upon navigable water the abutting land-owner had title to high-water mark. Upon non-navigable streams the abutting land-owner had title *ad filum medium aquæ*. In some of the original thirteen states which lay along the seashore, and where streams navigable in fact

were generally those in which the tide ebbed and flowed, the common-law rule was adopted. But when, early in this century, the great tide of emigration began to flow westward and follow the mighty watercourses of the continent, it soon became apparent that the common-law rule could not be applied to the great rivers navigable in fact, and one of which alone is in fact navigable above tide water for a distance which would several times girdle the ancient home of the common law. The common law was therefore modified, and the rule is now established by the overwhelming weight of American authority that a stream navigable in fact is navigable in law. For the history of the development, up to the year 1856, of this American rule, we refer to that profoundly learned treatise found in *McManus* v. *Carmichael*, 3 Iowa, 1, in which case the supreme court of Iowa, with the aid of able counsel, exhausted the whole subject.

With the adoption of this rule the doctrine that the riparian owner's title to the land bounded by a river nontidal, although navigable in fact, runs *ad filum*, was also generally repudiated.

But at this point the courts of different states have followed different paths. One group of states holds that the abutting title goes to high-water mark, and the other group holds that it extends to low-water mark. On this line the battle of decisions has waged since a period long prior to the time when the waters of our state were made the servants of commerce. Argument, history, reasoning, and politics have been called to the aid of the advocates of the two doctrines. (See the interesting collection of cases in the briefs of counsel in this case.)

As we, among the last commonwealths of the union, approach a solution of this question, it would be interesting, but in view of what has been done by scores of able courts before us, it would probably not be instructive or important, to make an excursion through this field, where the footprints of our remote predecessors have long ago been beaten into plain paths by those who are even now to us ancient explorers.

But in selecting into which one of these paths we shall turn the course of jurisprudence of this state it would, were it not for a matter which we will mention below, be appropriate that we

briefly state our reasons why we deem one rule rather than the other to be justified or demanded by our history, circumstances, geography, and topography, and by the fact that the common law, so far as the same is applicable and of a general nature, is adopted and in force in this state, until repealed by legislative authority.

We have concluded, after a review of the decisions of other states upon this subject, that, upon reason and authority, and in view of all the circumstances of this state, we are fully justified in holding that the boundary of land bordering upon a navigable river should, whenever another intent is not expressed, be held to extend to the ordinary low-water mark. We refrain from an elaborate presentation of our grounds for this holding, for the reasons suggested above, and also for the reason that the rule thus announced by decision will become, in a few months, the rule by statute.

This state is just about to enter upon a fully developed code era. The legislative assembly has just adopted a code of civil procedure, a civil code, a penal code, and a political code, prepared by commissioners during the labors of several years past. The law adopting the civil code was approved by the governor February 19, 1895. This code is to take effect and become the law on July 1, 1895. This subject of land being bounded by a navigable river is settled for the future by the Civil Code. The code commission and the legislature had before them the legal literature and learning to which we have above referred, and as a result they have adopted the rule of the low-water mark. Section 772 of the Civil Code is as follows: "Except where the grant under which the land is held indicates a different intent, the owner of the land, when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

This rule will be the law on the first day of July, 1895. We are also of opinion, as above stated, that it is the wisest and most expedient rule. We are thus, by the view which we take of the reason and authority for the rule of the low-water mark, enabled to leave the law in this important matter so that it will suffer no change by the adoption of the Civil Code.

We, therefore, for the reasons given, shall follow the decisions of those courts which hold that the title of one owning land bounded simply by a navigable river extends to the ordinary low-water mark.

Another matter, perhaps, should be noticed: Defendant claims in his argument that ejectment is not the proper remedy. He asserts that he has rights as a navigator or a fisherman upon the strip of land between the high-water and low-water mark, and that, having such rights, he cannot be ejected from that strip of land. It is true that while the abutting owner owns to the low-water mark on navigable rivers, still the public have certain rights of navigation and fishery upon the river and upon the strip in question. But no such case as that is made in the pleadings. Defendant does not claim any right whatever to be upon this strip of land for the purposes of navigation or fishery. His defense is clearly made upon the issue that plaintiff has no title whatever to the strip, and therefore he cannot recover possession of the same. Upon this issue we have to hold against the defendant. By the pleadings it appears that defendant had excluded plaintiff from the possession of the ground, and is in possession himself, generally, if it may be so expressed, and that he is not there claiming rights as a navigator or fisherman. The rights of navigation or of fishing are not at all involved in these pleadings. Therefore, the plaintiff owning this strip of land, subject only to the public use of navigation and fishing, which are not here concerned, and defendant having no claim or color or pretence of title or right of possession, it is difficult to see why ejectment would not lie.

It was said in *Rice* v. *Rodman,* 10 Mich. 130, by Martin, C. J., in a concurring opinion as follows: "I think the rights of riparian proprietors upon our interior lakes . . . . are the same as those of proprietors upon navigable streams. They have the right to construct buildings, wharves, and other improvements in front of their lands, so long as the public servitude is not thereby impaired; they are a part of the realty to which they attach and pass with it. Certainly no one can occupy for his individual purposes the water-front of such riparian proprietor, and the attempt of any person to do so

would be trespass." (See, also, *Berry* v. *Snyder*, 3 Bush, 266; *Hannaford* v. *St. Paul etc. Co.*, 43 Minn. 104; *Ball* v. *Slack*, 2 Whart. 508.)

We are therefore of the opinion that the demurrer to the answer was properly sustained, and the judgment for the plain-tiff is accordingly affirmed.

*Affirmed.*

HUNT, J., concurs.