No. 41,040

James E. Siler and Audrey Siler, d/b/a American Sand Company, Appellees, v. Milton G. Dreyer, d/b/a Dreyer Sand Company, Appellant.

(327 P. 2d 1031)

Opinion filed July 7, 1958.

*James H. Barnes* and *Donald H. Corson, Jr.,* both of Kansas City, argued the cause, and *Donald H. Corson,* of Kansas City, was with them on the briefs for the appellant.

*James K. Cubbison,* of Kansas City, argued the cause, and *John J. Bukaty, Blake A. Williamson* and *Lee Vaughan,* all of Kansas City, were with him on the briefs for the appellees.

*John Anderson, Jr.,* attorney general, *Robert J. Roth,* assistant attorney general, and *Charles H. Hobart,* assistant attorney general, were on the brief of *amicus curiae.*

The opinion of the court was delivered by

Wertz, J.: Defendant appeals from an order of the trial court permanently enjoining him from maintaining and operating certain sand-pumping equipment in the Kansas river landward of the water's edge and in front of the property leased by plaintiffs. The injunction was based on a finding that the Kansas river is subject to the control of the state only from water's edge to water's edge.

The facts necessary to a decision on the question involved follow: Plaintiffs (appellees) and defendant (appellant) both operate sand plants on the Kansas river in Wyandotte county. Defendant operates a sand plant on a tract of land which borders on the north bank of the river. Plaintiffs' main plant operation is on a tract of land which borders on the south bank of the river. Plaintiffs also lease a tract of land on the north bank immediately upstream from the tract upon which defendant's plant is located. Defendant pumps sand from the river by virtue of a contract with the state of Kansas (G. S. 1949, 71-101 et seq.). A previous decision of this court construed defendant's contract to permit him to pump sand from the

river to a point 1500 feet upstream from the extension of his west property line. (*Dreyer v. Siler,* 180 Kan. 765, 308 P. 2d 127.) In pumping upstream from his property line, defendant projects a boom composed of pontoon floats out into the river. Pipe is strung out along the boom and from thence leads up to defendant's tipple located upon his property. From such operation arose this controversy.

Plaintiffs (the Silers) filed a petition in district court alleging that defendant (Dreyer) and his employees were and had been trespassing upon their leasehold in operating the boom, that defendant and his employees had tied his sand barge to the bank and trees located on plaintiffs' leasehold, and that by reason of defendant's operation plaintiffs were unable to move their equipment from the south side of the river to their leasehold on the north bank. Plaintiffs' petition prayed that defendant be enjoined from tying to or using the bank of plaintiffs' leasehold and from obstructing plaintiffs' use of and right to use said property. Plaintiffs also asked for damages.

The district court rendered judgment for plaintiffs in accord with its memorandum opinion, the pertinent parts of which read:

"Plaintiffs contend that they have the exclusive right to use the river bank to the water's edge. Without attempting to decide ownership, the Court will hold that the plaintiffs, under their lease, are entitled, at least as against the defendant, to the *free and exclusive* use of their land to the water's edge.

"The defendant will be enjoined: (1) from placing or maintaining wires, cables or lines of any kind across any part of the land leased by plaintiffs; (2) from permitting any part of his dredging equipment, and particularly the pontoons upon which his flow line is floated, to at any time be north of the water's edge and west of defendant's west property line; and (3) to maintain the long piece of pipe in the flow line, clearly shown by plaintiffs' Exhibit 4, at such an angle that it will cross the north water line of the river at a point east of defendant's west property line.

"Plaintiffs also contend that the position of defendant's flow line along the north bank of the river is an invasion of their rights. With this the Court cannot agree.

"*From water's edge to water's edge the river bed is subject to the control of the State. The State in this instance has granted defendant the right to take sand within 1,500 feet upstream from his tipple. Since the State had the right to make such a grant to the defendant and did so, the Court is of the opinion that plaintiffs cannot be given relief on account of defendant's flow line and pontoons being in the water along the north river bank, so long as the flow line and pontoons are kept in the water.*" [Emphasis supplied.]

It is apparent that the trial court predicated its judgment on the

premise that defendant under his lease with the state was entitled only to operate and maintain his pumping equipment in and take sand out of that portion of the river bed covered by water at any stage of the river flow, "from water's edge to water's edge." The determinative question presented on this appeal, therefore, concerns the relative rights of the plaintiffs, the defendant and the state of Kansas in the area between the water's edge and the ordinary high-water mark along plaintiff's leasehold, it being unquestioned that the Kansas river is a navigable stream at this point. Neither party disputes the state's ownership or right to control soil and sand in the bed and channel of the Kansas river. Defendant claims that title to the area between the water's edge and the ordinary high-water mark is in the state of Kansas and that, therefore, as a matter of law it was erroneous for the trial court to enjoin defendant, a lessee of the state, from entering or using this area. Plaintiffs' argument on this question is based largely upon a Wisconsin case, *Doemel v. Jantz*, 180 Wis. 225, 193 N. W. 393, 31 A. L. R. 969, in which it was held, in accord with the previous Wisconsin view, that in regard to navigable waters a riparian owner holds a qualified title to the area between ordinary high-water mark and the water's edge, the qualification being that this title is subject to the public right to use for navigational purposes.

It has long been settled that the extent of the title of the owner of lands bordering upon navigable waters depends on the local law. (*State, ex rel., v. Akers*, 92 Kan. 169, 177, 178, 140 Pac. 637, and cases cited therein.) Therefore, Kansas law on the point must be regarded as controlling. The common law test of navigability never became the law of Kansas. (*State, ex rel., v. Akers*, supra, 202.) In *Kansas v. Colorado*, 206 U. S. 46, 27 S. Ct. 655, 51 L. ed. 956, it was stated that each state has full jurisdiction over the lands within its borders, including the beds of streams and other waters. G. S. 1949, 71-106 provides that the *bed and channel* of any river within this state and all islands and sand bars lying therein shall be considered to be the property of the state of Kansas unless this state or the United States has granted or conveyed an adverse interest therein. Since the early case of *Wood v. Fowler*, 26 Kan. 682, 40 Am. Rep. 330, it has been clear in Kansas that a riparian owner owns only to the bank and not to the center of a navigable stream. (*State, ex rel., v. Akers*, supra, 179.)

Plaintiffs support their contention that Kansas law is the same

as announced for Wisconsin in *Doemel v. Jantz*, supra, with quotations from Kansas cases holding that the owner of land bordering a navigable stream may acquire additional land by the process known as accretion. These very quotations illustrate that the Wisconsin rule has not been considered in effect in Kansas. Included in plaintiffs' quotations from *Fowler v. Wood*, 73 Kan. 511, 544, 85 Pac. 763, is an excerpt from *Wallace v. Driver*, 61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317:

"According to the cases we have cited, the high-water mark, as thus defined, being the boundary-line of the riparian owner in this state, is the point at which the formation of all lands acquired by him by accretion must begin. A formation of alluvion beginning at any other point would belong to the state or other party."

This seems clearly to hold that the boundary line of the riparian owner is the ordinary high-water mark and that for the riparian owner to obtain land the accretion must shift the ordinary high-water mark. It was stated in the case of *United States v. Mackey*, 214 Fed. 137, 153:

"The condition and wants of the people of Oklahoma, so far as the rights of riparian owners upon navigable streams in the soil of the beds thereof are concerned, must be considered as identical with that of the people of the neighboring states of Kansas, on the one side, and Arkansas, on the other, in both of which the rights of the riparian owners are held only to extend to high-water mark, the title to the bed between high-water marks being in the state. This doctrine has the support of the best-considered opinions of the state Supreme Courts, and, as we have seen, has the approval of the Supreme Court of the United States."

Both plaintiffs and defendant quote from *Cushenbery v. Waite-Phillips Co.*, 119 Kan. 478, 484, 240 Pac. 400:

"According to all the decisions in most of those states in which the lands were originally surveyed under the laws of the United States, the lines run by the United States surveyors along the river banks are not lines of boundary, the owners of the adjacent lands taking at least to the water's edge, thus giving them the benefit of the river frontage, with the right of access to the river, and the incidents of riparian proprietorship as to the use of the water. *The true boundary line of a navigable stream or lake is the point to which the water usually rises in ordinary seasons of high water.* The position of that line is a question of fact for the jury, and it controls although the meander line of the survey is found not to be coincident therewith. When landowners once become riparian proprietors they are entitled to the accretions, or newly formed ground which may be left by the river after the survey and sale by the United States of the adjacent land, and which, if not their property, would separate them from the river. . . ." [Emphasis supplied.]

It appears that the court in the mentioned case regarded the boundary line of the navigable stream to be the point to which the water usually rises in ordinary seasons of high water, thus setting the state's boundary line. The theory of the owners taking to the water's edge seems to have been regarded as existing only for the purpose of protecting the riparian right to access to the water frontage and access to the water.

Our cases appear to hold that the ordinary high-water mark is the boundary line between the bed of the river and the land of the riparian owner. In *State, ex rel., v. Berk,* 129 Kan. 645, 648, 284 Pac. 386, we approved a conclusion of law of the trial court that "the north boundary line of the river is the south line of lots one, two and three, with their accretions, being *the line to which water rises in ordinary seasons of high water,* . . ." [Emphasis supplied.]

It is therefore apparent we have held that the boundary line between a landowner and the state's navigable river bed is the line to which water rises in times of ordinary high water.

In view of what has been said it is obvious that the trial court entered judgment, predicated on an erroneous premise, that the jurisdiction of the state over the river bed was from water's edge to water's edge. The Kansas river is a navigable stream and the title to the bed and channel to ordinary high-water mark is in the state of Kansas. Therefore, defendant as lessee of the state is entitled to the use of the river bed and channel to ordinary high-water mark for the operation and maintenance of his sand-pumping equipment. Under the circumstances the judgment of the trial court is reversed and the case is remanded for a new trial in accordance with the views expressed herein.

It is so ordered.